# UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF WISCONSIN

*In the Matter of the Search of:*
Dell Latitude D810 laptop computer, Serial Number CN-0D8006-12961-57H-2373, Service Tag 8VPN481, currently in the custody of the Milwaukee Police Department (MPD) and stored in a secured area at the MPD High Technology Unit, located at 749 W. State Street, Milwaukee, Wisconsin, 53233.

APPLICATION & AFFIDAVIT
FOR SEARCH WARRANT

Case Number: 13-870M (NJ)

I, Jeremy Loesch, a Deputy U.S. Marshal, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Dell Latitude D810 laptop computer, Serial Number CN-0D8006-12961-57H-2373, Service Tag 8VPN481, currently in the custody of the Milwaukee Police Department (MPD) and stored in a secured area at the MPD High Technology Unit, located at 749 W. State Street, Milwaukee, Wisconsin, 53233.

there is now concealed certain property, namely: those items listed in **Attachment A**.

The basis for the search warrant under Fed. R. Crim. P. 41(c) is which is (check one or more):

✓ evidence of a crime;
☐ contraband, fruits of a crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of: Title 18, United States Code, Section 2252(a) (Child Pornography)

The application is based on these facts:

✓ Continued on the attached affidavit, which is incorporated by reference.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Name: JEREMY LOESCH
Title: Deputy U.S. Marshal, United States Marshals Service

Sworn to before me, and signed in my presence.
Date May 30, 2013
City and state: Milwaukee, Wisconsin

THE HONORABLE NANCY JOSEPH
United States Magistrate Judge

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Deputy U.S. Marshal, Jeremy Loesch, being first duly sworn, depose and state as follows:

I make this affidavit in support of an application for a search warrant authorizing the examination of:

1. Dell Latitude D810 laptop computer, CN-0D8006-12961-57H-2373, Service Tag 8VPN481 (hereinafter Computer 1)

2. Dell Latitude D810 laptop computer, CN-0D8006-12961-5B8-3062, Service Tag CNWN091 (hereinafter Computer 2)

3. Apple I-Phone, Model A1387, EMC 2430, FCC ID: BCG-E2430A, IC: 579C-E2430A (hereinafter I-Phone)

Computers 1 and 2 described above are owned by Chester E. Bowers (hereinafter Bowers). The I-Phone is owned by Heather Roth, but it was used by Bowers. The Devices are in the custody of the Milwaukee Police Department and are being stored at the Milwaukee Police Department High Technology Unit in a secure location, located at 749 W. State St. Milwaukee, Wisconsin and the extraction from the Devices of certain things described in Attachment A.

1. I am a Deputy with the U.S. Marshals Service, having been employed for over ten years. As part of my duties, I investigate violations of federal and state laws including those relating to fugitives.

2. I am requesting authority to search Computer 1, Computer 2 and the I-Phone for the items specified in Attachment A for evidence of violations of 18 U.S.C. § 2252(a), entitled, certain activities relating to material constituting or containing child pornography.

3. The information contained in this affidavit is based on my training and experience, as well as information provided to me by other law enforcement officers and citizens, whom I believe to be truthful and reliable. This affidavit is

not an exhaustive account of everything I know about this case. Rather, it contains only the facts that I believe are necessary to establish probable cause to search the Devices, described above, owned and used by Chester E. Bowers.

Prior Federal Search Warrants Issued for Computers 1 and 2 and I-Phone

4. On May 9, 2013, two search warrants were signed by the Honorable Magistrate Joseph authorizing the search of Computer 1 and the I-Phone for all records/evidence related to violations of the Adam Walsh Act, 18 U.S.C. § 2250(a). (13-848M(NJ) and 13-849M(NJ)).

5. On May 14, 2013, a search warrant was signed by the Honorable Magistrate Joseph authorizing the search of Computer 2, for all records/evidence related to violations of the Adam Walsh Act, 18 U.S.C. § 2250(a). (13-855M(NJ).

6. On May 14, 2013, I retrieved Computer 1, Computer 2 and the I-Phone from the U.S. Marshals Service evidence room and transferred them to Detective Sean Lips of the Milwaukee Police Department's High Technology Crimes Unit for analysis.

Statutory Terms

7. Pursuant to U.S.C. § 2256(1), the term "minor" means any person under the age of eighteen years.

8. Pursuant to 18 U.S.C. § 2256(2)(A), the term "sexually explicit conduct" means actual or simulated —
   a. sexual intercourse, including genital-genital, oral-genital, anal genital, or oral-anal, whether between persons of the same or opposite sex;
   b. bestiality;
   c. masturbation;
   d. sadistic or masochistic abuse; or
   e. lascivious exhibition of the genitals or pubic area of any person.

9. Pursuant to 18 USC § 2256(8), the term "child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or

computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where -
   a. the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
   b. such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or,
   c. such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

Background on the Use of Computers for Child Exploitation

10. According to my consultation with other law enforcement officials, I know that the primary manner in which child pornography is produced, distributed, and possessed is through the use of computers. Pornographers produce both still and moving images directly from common video or digital cameras attached to a computer. Producers of child pornography often use a device known as a scanner to transfer photographs into a computer readable format and then either send the images directly through the Internet or copy the images into a disk and send them through the United States mail. Many digital cameras can be connected directly to a computer, and through the use of various software programs, photographs and videos can be transferred directly to a computer, can be transferred to another computer via the Internet, and can be stored directly onto a computer.

11. Each time an individual views an online digital image, that image, or remnants of that image, are automatically stored on the hard-drive of the computer used to view the image. Once an individual opens an image of child pornography on his computer or accesses such an image through the Internet, that image is saved in the computer's "cache." This allows investigators to review a history of the images opened/accessed by the user of the computer long after the image has been opened or accessed.

12. Digital information can also be retained unintentionally; for instance, traces of the path of an electronic communication may be automatically stored in many

places, including temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data. In fact, computer files or remnants of files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Even when the files have been deleted, they can be recovered months or years later using readily available forensic tools. In addition, a computer's operating system may also keep a record of deleted data in a swap or recovery file. Files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

13. Individuals who possess, receive, transfer, and distribute child pornography use communication devices known as modems or cable connections that allow any computer to connect to another computer by telephone line, cable, or wireless service. By connection to an Internet service provider, electronic contact can be made to millions of computers around the world. Internet service providers are sometimes commercial entities that allow subscribers to dial local numbers to connect to a network, which is then connected to their host systems. "Hotmail," for example, is an anonymous and free e-mail service based in California. These Internet service providers allow electronic mail service between subscribers and usually between their own subscribers and those of other networks. Once one has subscribed to an Internet service provider, it costs nothing to send or receive image files. Further, each image is a digital duplicate of the computer original, and a child pornography distributor's collection is thus not diminished by distributing the pornography to others via computer. This open and anonymous communication allows the user to locate others of similar inclination and still

maintain anonymity. Once contact is established, it is then possible to send text messages and graphic images to others. These communications can be quick, relatively secure, and as anonymous as desired.

14. The ability to store images in digital form makes the computer an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown exponentially within the last several years. Hard drives with a capacity of one terabyte are not uncommon, and these drives can store thousands of images at very high resolution.

15. Images can be electronically mailed to anyone with access to a computer and modem, and they can be downloaded onto computers, computer discs, or CD-ROMs for ease of storage, duplication, and distribution. With the proliferation of commercial services providing Internet service, computer transfer and digital copying is the preferred method of distributing child pornography.

16. The capacity of computers, along with the ease of access and relative anonymity afforded to computer users, permits individuals with an interest in child pornography to amass large collections of such materials.

17. According to my consultation with other law enforcement officials, I know that individuals involved in the collection and distribution of child pornography often categorize the images in their collections, constantly seek new materials to add to their collections, and maintain their collections for many years.

## Background on Child Pornography Collectors

18. According to my consultation with other law enforcement officials, I know that individuals who collect child pornography are sexually attracted to children, and their sexual arousal patterns and erotic imagery focus, in part or in whole, on children. I also know the following about matters involving child pornography collectors and their activities:

    a. The collection may be exclusively dedicated to children of a particular

age/gender or it may be more diverse, representing a variety of sexual preferences, including children.

b. Child pornography collectors express their attraction to children through the collection of sexually explicit materials involving children as well as other seemingly innocuous material related to children. These individuals may derive sexual gratification from actual physical contact with children as well as from fantasy involving the use of pictures or other visual depictions of children or from literature describing sexual contact with children.

c. The overriding motivation for the collection of child pornography may be to define, fuel, and validate the collector's most cherished sexual fantasies involving children. Visual depictions may range from fully clothed depictions of children engaged in non-sexual activity to nude or partially nude depictions of children engaged in explicit sexual activity.

d. In addition to child pornography, these individuals are also likely to collect other paraphernalia related to their sexual interest in children. This other material is sometimes referred to as "child erotica," which is defined as any material relating to children that serves a sexual purpose for a given individual. It is broader and more encompassing than child pornography, but the possession of such corroborative material, depending on the context in which it is found, may be behaviorally consistent with the offender's orientation toward children and indicative of his intent. It includes things such as fantasy writings, letters, diaries, books, sexual aids, souvenirs, toys, costumes, drawings, cartoons, and nonsexual explicit visual images.

19. Child pornography collectors reinforce their fantasies, often by taking progressive, overt steps aiming at turning their fantasies into reality in some or all of the following ways:

a. Collecting and organizing their child related material;
b. Masturbating while viewing the child pornography;
c. Engaging children, online and elsewhere, in conversations to fuel and fortify the fantasy;
d. Interacting, both directly and indirectly, with other, like-minded adults

through membership in organizations catering to their sexual preference for children thereby providing a sense of acceptance and validation within a community;

e. Gravitating to employment, activities and/or relationships that provide access or proximity to children; and

f. Frequently persisting in the criminal conduct even when they have reason to believe that the conduct has come to the attention of law enforcement.

These are need-driven behaviors to which the offender is willing to devote considerable time, money, and energy in spite of risks and contrary to self-interest.

20. Based upon my consultation with other agents and law enforcement officers, I know:

    a. That child pornography collectors almost always maintain and possess their material in the privacy and security of their homes or some other secure location where it is readily available.
    b. The collection of child pornography collectors may include sexually explicit or suggestive materials involving children, such as photographs, magazines, narratives, motion pictures, video tapes, books, slides, drawings, computer images, or other visual media.
    c. The collector is aroused while viewing the collection and, acting on that arousal, he often masturbates, thereby fueling and reinforcing his attraction to children.
    d. Because the collection reveals the otherwise private sexual desires and intent of the collector and represents his most cherished sexual fantasies, the collector rarely, if ever, disposes of the collection. The collection may be culled and refined over time, but the size of the collection tends to increase. Consistent with this, a lapse of time between the obtaining of child pornography by the collector/suspect and the discovery and identification of that by law enforcement (and, for instance, the subsequent execution of a search warrant at the residence of the child pornographer) does not typically prompt the collector to secrete, dispose of, or destroy that evidence. In fact, the passage of time often affords

collectors the opportunity to obtain, view, and possess additional images of child pornography. Furthermore, it has been my experience that, even if image files are deleted from a computer prior to the intervention of law enforcement, those files may be recovered from the system using computer forensic tools.
   e. Individuals who use a pornography collection in the seduction of children or to document that seduction treat the materials as prized possessions and are especially unlikely to part with them.
   f. Individuals who have a sexual appetite for child pornography are likely to always have that desire; these individuals often molest children as well.
   g. The possession of child pornography is appropriately regarded as both a violation of the law and possible corroboration of child sexual victimization. In the context of child molestation, child pornography and child erotica is often used in several ways, including the following: To desensitize or lower the inhibitions of children targeted for seduction, to arouse the selected child partner, and to demonstrate the desired sexual acts.
   h. While the collection of child pornography does not always indicate or reveal expressly what the individual has done or will do, it is the best indicator of what he desires to do.

## Results of the Present Investigation to Date

21. On May 28, 2013, Detective Lips told me that during his analysis of Computer 2 he observed an image that, based upon his training and experience, he believed to be child pornography. Detective Lips described the image to me as, close up photo of a Caucasian female approximately 2 years old, with shoulder length blond hair. A penis of an adult Caucasian is seen in the photo touching the girl's lips.

22. Upon viewing the image described in paragraph 21 above, Detective Lips stopped his analysis of Computer 2.

## Statement of Probable Cause in Support of Application

23. Based on the facts as I have stated in this affidavit, I believe there is probable cause to believe that evidence of violations 18 U.S.C.§ 2252(a) are contained in Computer 1, Computer 2 and the I-Phone described above.

# ATTACHMENT A

All records relating to violations of Title 18, United States Code, Section 2252, including:

a. Records containing child pornography or pertaining to the distribution, receipt or possession of child pornography;

b. evidence of who used, owned, or controlled the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

c. evidence of software that would allow others to control the Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

d. evidence of the lack of such malicious software;

e. evidence of the attachment to the Device of other storage devices or similar containers for electronic evidence;

f. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device;

g. evidence of the times the Device was used;

h. passwords, encryption keys, and other access devices that may be necessary to access the Device;

i. contextual information necessary to understand the evidence described in this attachment;

1